IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Kimberly Hurtado, | ) | C/A No.: 1:09-1073-MBS-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michael J. Astrue, Commissioner of | ) | |
| Social Security Administration | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This appeal from a denial of social security benefits is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff ("Plaintiff" or "Claimant") brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards.

I.      Relevant Background

A.      Procedural History

Plaintiff filed for DIB on February 7, 2005, alleging disability since November 2, 2002. Tr. 50–55. Her claim was denied initially and on reconsideration. Tr. 34–43. Following a hearing on August 14, 2008, at which Plaintiff and her attorney, J. Robert Surface, appeared, Administrative Law Judge ("ALJ") Paul C. Armitage issued an unfavorable decision on November 11, 2008, denying Plaintiff's claims. Tr. 14–20 (hr'g

tr.), Tr. 14–20 (ALJ's decision). Plaintiff submitted additional evidence to the Appeals Council with her request for review of the ALJ's decision. Tr. 369–93. The Appeals Council "considered the reasons [Plaintiff] disagree[d] with the decision and the additional evidence . . . [, but] found that this information does not provide a basis for changing the Administrative Law Judge's decision." Tr. 5–7. Thus, the ALJ's decision became final and this case is ripe for judicial review pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981. This appeal followed.

B.    Plaintiff's Background and Medical History

Born in 1970, Plaintiff alleges disability as of November 2, 2002, and she was last insured on September 30, 2007. Plaintiff completed two years of college and has past relevant work as a pharmacy technician. Tr. 96, 398.

1.    Medical Evidence

Plaintiff has not disputed the Commissioner's recitation of her medical history set out in the Memorandum in Support of the Commissioner's Decision. [Entry #13.] Therefore, the undisputed medical evidence as stated by the Commissioner is set forth herein.

Plaintiff developed hand and wrist pain after her second child was born, and had increased general pain and fatigue after the birth of her third child in 2001. Tr. 410. In mid-2002, she complained of morning stiffness in her hands and evening hip pain. Tr. 179. Her primary care physician, Tauqueer Alam, M.D., referred her to a physician specializing in carpal tunnel syndrome, Dr. McCallum (first name unknown). Dr. McCallum diagnosed her with bilateral carpal tunnel syndrome and possible underlying

inflammatory arthropathy and referred Plaintiff to a rheumatologist, Amir Agha, M.D. *See* Tr. 179, 228, 401–02. Dr. Agha initially thought Plaintiff had lupus, rheumatoid arthritis, or an unspecified connective tissue disease. Before and during the time period at issue, he administered numerous blood tests to check for certain markers of various rheumatic diseases.[1] These blood tests sometimes showed that various markers were present, and other times showed none were present. *See, e.g.*, Tr. 181, 182, 188, 190, 216, 224, 228, 229, 233–35, 291.

In October 2002, Dr. Agha noted that Plaintiff had "done well" with Plaquenil and had decreased pain and stiffness, no swelling or inflammation of the synovial membranes that line the joints ("synovitis"), and intact strength. Tr. 228. Dr. Alam and other non-rheumatologist physicians characterized Plaintiff's diagnosis as fibromyalgia, rheumatoid arthritis, lupus, carpal tunnel syndrome, a connective tissue disorder, inflammatory arthropathy, or some combination thereof. *See, e.g.*, Tr. 125, 127, 136, 138, 167, 169, 172, 178, 183, 310, 314.

---

[1]In his brief, the Commissioner provides the following reference regarding these markers:

> Markers indicating rheumatic diseases include anti-nuclear antibodies ("ANA", usually present in lupus and sometimes present in rheumatoid arthritis), rheumatoid factor antibodies (usually—but not always—present in rheumatoid arthritis), and a high erythrocyte sedimentation rate ("ESR" or "sed rate," which measures the amount of inflammation present).

Def.'s Br. 3, n.3 (citing to http://rheumatic.org/tests.htm).

In May 2003, Plaintiff saw Dr. Alam, and told him that Dr. Agha had recently reduced her dosage of Plaquenil and that she had "been doing extremely well." Tr. 178. Dr. Alam instructed Plaintiff to exercise daily. Tr. 178.

When Dr. Agha examined Plaintiff in October 2003, Plaintiff reported swelling in her hands and fingers, and had synovitis (joint membrane inflammation), and he prescribed Methotrexate. Tr. 212. In November 2003, Dr. Alam noted that Plaintiff was "doing well." Tr. 176. Later that month, Plaintiff sought emergency care for left-sided lower back pain. Tr. 146–51. On examination, she had "free range of motion" and "good strength" in her extremities. Tr. 147. The attending physician determined that her back pain was caused either by a kidney stone that had already passed, or a small ovarian cyst. Tr. 148. Throughout early to mid-2004, Plaintiff continued to see Dr. Agha every few months and had no new rheumatic complaints. Tr. 203, 206. She returned to Dr. Alam in March 2004 and reported that she was "doing well" and was "keeping her brother's kids for a few hours every day." Tr. 173. In July 2004, Plaintiff told Dr. Alam that her joint pain was "much better." Tr. 172. In August 2004, she told Dr. Agha that she felt tired, but "otherwise good." Tr. 200. Dr. Agha noted that her condition was stable, and continued her current medications. Tr. 200.

In September 2004, Plaintiff developed lightheadedness (presyncope), a visual disturbance, and a headache that differed somewhat from her usual migraines. Tr. 138–39. Nurse Practitioner Brian Kelly McCormick evaluated her and admitted her to a hospital for observation. Tr. 139. Diagnostic scans of Plaintiff's brain revealed no acute lesions,

but there was a "small cyst area" in her brain, the significance of which was not noted. Tr. 144. Plaintiff was discharged the following day. Tr. 136. The following month, Plaintiff saw neurologist Jerry F. Sherrill, Jr., M.D., for an evaluation. Tr. 293-95. She stated that her headaches usually made her sensitive to light, lasted between two and 48 hours, and occurred about 10 times per month. Tr. 293. Dr. Sherrill noted that the cyst in her brain appeared benign, and determined that her recent episode was an atypical migraine. Tr. 294. He prescribed migraine medications Midrin and Topamax. Tr. 295.

In January 2005, an examination by Dr. Agha was unchanged, and Plaintiff had no new complaints. Tr. 195. But, when she presented to Dr. Alam that month, she complained of headaches, sleep difficulties, and stress related to financial problems and taking care of her three young children while her husband worked "extremely long hours." Tr. 169. Dr. Alam adjusted her medications. Tr. 169.

In a daily activity questionnaire completed in February 2005, in connection with her DIB application, Plaintiff reported that she needed help with dressing "every once in a while" and needed daily help getting up from her couch and chair. Tr. 59–60. She also stated that her hands hurt so badly that she had to use "the fattest pens or pencils" in order to write, but she acknowledged that she crocheted and could drive her car for up to an hour at a time. Tr. 61–62. She explained that she could do limited cooking, housework, and shopping, that she no longer visited friends, and that she was no longer active in church. Tr. 59–61. She indicated that one of the primary reasons she limited her activities was that she had a three-year-old child in diapers whom she was trying to potty train, a

four-year-old child whom she had to pick up from school mid-morning, and a seven-year-old child whom she picked up mid-afternoon. Tr. 62.

In March 2005, Plaintiff returned to Dr. Sherrill and reported that her "marked headaches" still continued and were "rather severe." Tr. 289. Dr. Sherrill adjusted her medications. Tr. 289. The following month, Plaintiff saw Dr. Alam for a follow-up visit and indicated she felt "much better." Tr. 167. She also followed up with Dr. Agha and complained of pain and swelling in her wrists, and again had synovitis. Tr. 192. Dr. Agha prescribed a corticosteroid (Prednisone) for two weeks. Tr. 192. In July 2005, state agency physician Frank Ferrell, M.D., reviewed Plaintiff's records, noted her impairments and determined that she was capable of lifting twenty pounds occasionally and ten pounds frequently; standing, walking, and sitting for about six hours each in an eight-hour workday; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds; and that she needed to avoid concentrated exposure to hazards. Tr. 246–49.

Also in July 2005, Plaintiff returned to Dr. Agha and complained that she was not sleeping. He reduced her Methotrexate dosage and prescribed a sleep medication. Tr. 191. Plaintiff also returned to Dr. Sherrill, reported that she had "not had any return of headaches," and that she was "doing very well" in that regard. Tr. 287. Dr. Sherrill noted that her headaches were "in good control." Tr. 288.

She also had a psychological evaluation by David G. Cannon, Ph.D., in connection with her DIB application. Tr. 160–61. At the evaluation, she acknowledged that she

drove a car, "carrie[d] out self-care activities such as dressing and bathing, and prepared meals. Tr. 161. Dr. Cannon concluded that she "should be capable of maintaining concentration and pace sufficiently to complete tasks in a timely fashion in a work environment . . . [although] her stated medical problems could significantly impact her abilities in this area." Tr. 161.

On August 25, 2005, Plaintiff told Dr. Alam that she was "feeling much better" in general, that her headaches were "much better even though the situation at home ha[d] not changed much, and that her joint problems were "doing better." Tr. 164. On August 29, 2005, she returned to Dr. Sherrill and told him that she still had "some" migraines. He adjusted her medications. Tr. 285.

In September 2005, Plaintiff reported to Dr. Sherrill that she was having a "few" headaches. He noted she was "all smiles" and "doing beautifully well." Tr. 283. In October 2005, she returned to Dr. Agha and complained of shoulder pain increasing at night, so he adjusted her medications. Tr. 187.

In January 2006, Plaintiff complained of wrist pain, but Dr. Agha made no new findings. Tr. 304. Also in January 2006, Plaintiff reported in a questionnaire that her daily activities consisted of taking her two eldest children (then ages eight and five) to school each morning, caring for her youngest child (then age four) at home, preparing simple food like cereal or sandwiches, reading or watching television, helping her two eldest children with homework, and resting. Tr. 83, *see also* Tr. 85–86. She acknowledged doing "normal motherly duties" when possible, but said that if she did "any

type" of household chores, she would "end up in bed the next 2–3 days in such pain [she could not] get up."   Tr. 84, 86.   She reported that she drove a car and shopped for groceries and food, went to movies, went out to eat, and went to church "weekly & monthly."   Tr. 86–87.   Plaintiff claimed that she could not lift more than five pounds, and that standing, reaching, walking, sitting, kneeling, and stair-climbing increased her pain.   Tr. 88.   She stated that she could pay attention for 60 to 90 minutes at a time and follow instructions "very well."   Tr. 88.

In March 2006, state agency physician Seham El-Ibiary, M.D., reviewed Plaintiff's medical records and concluded that she was capable of lifting twenty pounds occasionally and ten pounds frequently; standing, walking, and sitting (with normal breaks) for about six hours each in an eight hour day; frequently climbing; and occasionally balancing, stooping, kneeling, crouching, and crawling.   Tr. 238–39.   Dr. El-Ibiary noted that Plaintiff should avoid concentrated exposure to hazards such as machinery and heights.   Tr. 240–41.

Also that month, Plaintiff returned to Dr. Alam and said she was "doing okay," although she had increasing fatigue and sleepiness, and one breakthrough headache per week.   Tr. 318.   Plaintiff returned to Dr. Sherrill in April 2006 and was "all smiles," reporting that her energy level and headaches were "remarkably better," and that she only had "a little bit" of daytime sleepiness.   Tr. 281.   When she returned to Dr. Agha that month, she complained of wrist pain.   Tr. 303.

In May 2006, Dr. Alam noted that Plaintiff's headaches had improved, and that she "only had to use rescue treatment for migraines once in about 4 to 6 weeks." Tr. 317. In July 2006, Plaintiff told Dr. Agha that her hands were painful, so he increased her medications. Tr. 302. In September, she complained to Dr. Alam that she was having "a lot of chronic pain." Tr. 314.

In March 2007, Dr. Alam reported that Plaintiff had been under tremendous stress because of her husband's illness, and that she had a fibromyalgia flare-up . Tr. 313.

### 2. Administrative Hearing Testimony

At the August 2008 administrative hearing, Plaintiff testified about pain in her wrists, fingers, arms, shoulders, ribs, hips, and legs; flu-like symptoms; muscle aches; fatigue; and recent back pain. Tr. 402–04. She reported having two headaches that week, which caused her to lie down with an eye mask and ice pack. Tr. 406. In terms of functioning, she claimed that she could barely lift her pocketbook, that her left hand was "almost locked completely," and that she would "get confused trying to think." Tr. 403. She stated that her husband had to help her get dressed and had to drive her to the hearing. Tr. 404, 406. When asked how far she could walk in an eight-hour day, she testified, "[w]hen I take one step it hurts." Tr. 405. She estimated that she could stand for only five minutes total and sit for one hour total in an eight-hour day, and that she would usually lie down. Tr. 405. She said that she could lift a twenty-ounce bottle at most in her right hand, and could not even lift that amount with her left hand. Tr. 405. Regarding her activities, Plaintiff testified that she spent a typical day telling her children "things to do,"

reading, and watching television and that she drove her children to and from school. Tr. 407–08. She said she visited a friend occasionally, and that she used to crochet, but had difficulty doing it for very long. Tr. 406, 407. She testified that she had attended church only twice since the beginning of 2008 because of panic attacks and pain. Tr. 407. She stated that she cooked once or twice per month, at which time she would "go all out," and then spend the next three days in bed. Tr. 407. She testified that her husband and children did all of the housework . Tr. 404.

### 3.  ALJ's Decision

Utilizing the Commissioner's five-step sequential evaluation process (see 20 C.F.R. § 404.1520), the ALJ evaluated the evidence and concluded that Plaintiff's impairments were not disabling through the September 30, 2007 expiration of her DIB insured status. Tr. 14–20. At step one, he found that she had not performed substantial gainful activity since the alleged onset date of disability, November 2, 2002. Tr. 16. At step two, he found that she had the "severe" impairment of fibromyalgia. Tr. 16. He also considered Plaintiff's headaches, depression, and anxiety, and concluded that they responded well to treatment and did not cause more than minimal limitations on her ability to function, making them "non-severe" impairments. At step three, he found that her impairments did not meet or equal the criteria of any impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1, so as to be presumptively disabling. Tr. 17. He then considered Plaintiff's subjective complaints, finding some of them not fully credible, and found that she had the residual functional capacity ("RFC") to perform light work (as defined in 20 C.F.R. §

404.1567(b)), with no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and no concentrated exposure to hazards. Tr. 18–20. At step four, the ALJ found that Plaintiff's RFC would not preclude her past relevant work ("PRW") as a pharmacy technician. Tr. 20. Because Plaintiff was capable of performing her past work through the expiration of her insured status (September 30, 2007), the ALJ concluded that she was not disabled within the meaning of the Act and denied her DIB claim. Tr. 20.

### 4. Additional Evidence Submitted to the Appeals Council

Plaintiff submitted additional medical evidence to the Appeals Council, all of which was dated after the September 30, 2007 expiration of her insured status. Tr. 369–93. A September 2008 record from Dr. Alam's practice indicated that an MRI, which had been taken after a fall, revealed that Plaintiff had arthropathy in her lower back, and that chiropractic adjustments made her feel "much better." Tr. 372, *see* Tr. 380. She also submitted Dr. Agha's treatment notes from June 2008 through February 2009. Tr. 389–93. These records generally indicated that Plaintiff continued to have musculoskeletal pain with intermittent swelling. The Appeals Council found that none of the additional evidence "provide[d] a basis for changing the Administrative Law Judge's decision." Tr. 6.

II.    Discussion

Plaintiff argues that the Commissioner's findings are in error because:

1.    the ALJ finding that several of the Plaintiff's impairments were not severe is unsupported by substantial evidence;

2.    new evidence submitted to the Appeals Council requires remand; and

3.    the ALJ failed to correctly assess Plaintiff's credibility.

The Commissioner counters that the additional evidence submitted to the Appeals Council does not require remand and that the ALJ's decision is supported by substantial evidence.

A.    ALJ Findings

In his decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant last met the insured status requirements of the Social Security Act on September 30, 2007.

2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of November 2, 2002 through her date of last insured of September 30, 2007 (20 CFR 404.1571 *et seq.*).

3.    Through the date of last insured, the claimant had the following severe impairment: fibromyalgia (20 CFR 404.1521(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5.    After careful consideration of the entire record, I find that, through the date of last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to occasionally climbing, balancing, stooping, kneeling, crouching, and crawling. She must avoid concentrated exposure to hazards.

6.   Through the date of last insured, the claimant was capable of performing past relevant work as a pharmacy technician.  The work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.   The claimant was not under a "disability," as defined in the Social Security Act, from November 2, 2002, the alleged onset date, through September 30, 2007, the date of last insured (20 CFR 404.1520(g)).

Tr. 16–20.

B.   Legal Framework

1.   The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines "disability" as follows:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of "disability" to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that

impairment meets or equals an impairment included in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1; (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant "disabled or not disabled at a step," Commissioner makes determination and "do[es] not go on to the next step.").

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert ("VE") demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Id.* If the Commissioner satisfies its burden, the claimant must then

establish that she is unable to perform other work. *Id.; see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

## 2. The Court's Standard of Review

The Social Security Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id., Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek v. Finch*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is

substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.    Analysis

The ALJ found that Plaintiff suffered from the severe impairment of fibromyalgia, but that she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  Tr. 16–17. He then considered Plaintiff's RFC and found she could still perform her past work as a pharmacy technician and was not disabled.  Tr. 18–20.

1.    The ALJ Did Not Adequately Consider Plaintiff's Impairments.

Plaintiff's initial argument is that the ALJ erred by not considering her complaints of rheumatoid arthritis, carpal tunnel syndrome, or migraine headaches "severe" impairments.  Pl.'s Br. 13–19.  More specifically, Plaintiff points out that the ALJ did not even mention "rheumatoid arthritis" or "arthritis" at all in his decision, making it "impossible to determine" whether the ALJ "actually even considered" her rheumatoid arthritis and "dismissed it as a severe impairment, or in the alternative simply was not aware" of the evidence concerning her rheumatoid arthritis when issuing his decision.  *Id.* at 13–17.   Similarly, Plaintiff argues, the ALJ erred by not mentioning carpal tunnel syndrome and not analyzing whether it was a "severe" impairment in his decision, although she was repeatedly diagnosed with it.  *Id.* at 17–18.  Plaintiff notes that the ALJ did address her complaints of migraine headaches, but claims that his finding that the

migraines were "non-severe" was error. *Id.* at 18–19. Additionally, Plaintiff argues that the ALJ failed to consider all of her impairments in combination. *Id.* at 14.

The Commissioner responds initially by claiming that it does not matter whether the ALJ considered each impairment at step two of the analysis. So long as he finds one of a claimant's impairments to be "severe," the Commissioner argues, the claimant has satisfied step two and the ALJ must continue the analysis. Def.'s Br. 12–13. The Commissioner also argues that, so long as the ALJ moves past step two and adequately considers a claimant's symptoms in the remainder of his analysis, the ALJ has adequately completed the disability analysis. *Id.* at 13. The Commissioner then argues that the ALJ adequately considered Plaintiff's claims of migraine headache, rheumatoid arthritis, and carpal tunnel syndrome because he evaluated all symptoms and limitations Plaintiff alleges result from those conditions and her fibromyalgia. *Id.* at 13–15. The court does not agree.

> a. The ALJ Erred By Not Addressing Plaintiff's Claimed Impairments of Rheumatoid Arthritis or Carpal Tunnel Syndrome.

Plaintiff claims the ALJ erred by not finding her complaints of rheumatoid arthritis or carpal tunnel syndrome to be severe impairments. The court agrees. Not only did the ALJ not find these complaints to be "severe impairments," he did not mention either of these complaints. Plaintiff explains that the ALJ did not include any "meaningful discussion" of Plaintiff's claimed rheumatoid arthritis in the decision at all, nor did he

explain whether he considered it at all. Pl.'s Br. 15–16. Plaintiff argues the ALJ's treatment of the claimed carpal tunnel syndrome is equally deficient. *Id.* at 17–18.

The Commissioner concedes that the ALJ "never used the specific terms "'rheumatoid arthritis' or 'carpal tunnel syndrome' in the decision." Def.'s Br. 13. Admitting that "it may have been preferable for the ALJ to do so," the Commissioner defends any error as "at most, harmless," because, he argues, the ALJ did adequately consider Plaintiff's "fibromyalgia as well as Plaintiff's full range of symptoms and limitations." Def.'s Br. 13. The Commissioner argues that the ALJ's failure to "cite particular diagnoses did not affect the outcome." *Id.* at 13–14.

The court is not persuaded. Although the substantial-evidence standard of review requires the court to uphold the ALJ's disability determinations, the court cannot conduct the review when it is unable to determine how the ALJ viewed particular evidence. *See Gordon v. Schweiker*, 725 F.2d 231 (4th Cir. 1984). In this case, Plaintiff listed "Rheumatoid Arthritis" and "Cyst on Brain causes severe migraines" as her bases for seeking disability benefits. Tr. 63. Yet, review of the ALJ's decision makes no mention of her complaints of rheumatoid arthritis. Further, she was diagnosed with carpal tunnel syndrome. *See* Tr. 179, 401–02. However, there is no mention of carpal tunnel syndrome in the decision.

In his step-two analysis, the ALJ finds Plaintiff has the severe impairment of fibromyalgia. Tr. 16. In his discussion of his step-two findings, though, he never mentions her claimed rheumatoid arthritis or carpal tunnel syndrome. Just after his

finding that Plaintiff suffers from the severe impairment of fibromyalgia (finding 3 on page 3 of the ALJ's seven-page decision), the ALJ indicates that Dr. T.S. Alam treated Plaintiff for "complaints of generalized pain" and Dr. Amir Agha treated her for "reports of pain and stiffness." Tr. 16. He indicates that Dr. Alam "repeatedly noted [Plaintiff] was doing extremely well," and that "Dr. Agha often stated [Plaintiff] was stable." *Id.* This discussion, though, never indicates specifically to which of Plaintiff's claimed impairments they reference, nor does it include the ALJ's finding that a certain claimed impairment is, or is not, severe.

The remainder of the ALJ's step-two analysis includes discussion of Plaintiff's claimed "disability due to migraine headaches and a cyst on the brain," followed by discussion of her "alleged disability due to depression and anxiety." Tr. 16–17. The ALJ spends several paragraphs discussing these claimed impairments and finds they are not severe. *Id.* Plaintiff appeals the characterization of her migraine headaches as non-severe, which is discussed below. Plaintiff has not challenged the findings regarding depression and anxiety.

In defense of the ALJ's treatment of Plaintiff's symptoms and claims, the Commissioner's argument essentially is that rheumatologists treat various "rheumatic disorders," including "rheumatoid arthritis, fibromyalgia, carpal tunnel syndrome," and that the disorders may cause similar symptoms, making it difficult for a rheumatologist to precisely diagnose which disorder or disorders a patient has. *See* Def.'s Br. at 3, n.2 (citing http://arthritis.about.com/od/diseasesandconditions/

Types_of_Arthritis_Rheumatic_ Diseases_Related_Conditions.htm; http://www.rheumatology.org/public/rheumatologist.asp). The Commissioner points to the record and indicates that Plaintiff's physicians—her rheumatologist Dr. Agha and her primary care physician Dr. Alam—made various diagnoses over time. Def.'s Br. 14. More specifically, the Commissioner points out that the ALJ pointed to notes from Dr. Agha and Dr. Alam in which they noted Plaintiff's treatments for "complaints of generalized pain," her symptoms of "pain and stiffness," and "synovitis over the joints." Def.'s Br. 14 (citing to Tr. 16, 18–19).

The Commissioner claims that the ALJ's discussions of pain throughout the decision, including in his discussion of Plaintiff's RFC, indicate he "explicitly acknowledged that [Plaintiff] had a rheumatoid disorder, of which musculoskeletal pain is a major feature." Def.'s Br. 14. For example, the Commissioner argues that the ALJ adequately considered all of Plaintiff's claimed impairments because he "broadly noted that Plaintiff was treated for 'complaints of generalized pain,' and that her symptoms included 'pain and stiffness' as well as 'synovitis over the joints[.]'" *Id.* (*quoting* Tr. 16, 18–19).

The Commissioner's argument is not persuasive. The ALJ's failure to cite specifically to rheumatoid arthritis or carpal tunnel syndrome makes it impossible to confirm that he even focused on these complaints, or the doctors' notes regarding these complaints or diagnoses, in reaching his conclusions. The Commissioner's legal briefing offers post-hoc explanations that attempt to tie together the entire discussion in the

decision and suggests a finding regarding "fibromyalgia" translates into a finding that the ALJ considered all of Plaintiff's claims that in any way related to her alleged rheumatoid arthritis and/or carpal tunnel syndrome. This argument simply does not salvage the ALJ's decision.

The Commissioner's reliance on *Lewis v. Astrue*, 498 F.3d 909 (9th Cir. 2007), does not change the analysis. In that case, at step two, the ALJ found the claimant was impaired as a result of "'status post laminectomy and diabetes mellitus.'" 498 F.3d at 910. Claimant complained that the ALJ had not found his bursitis to be a severe impairment. Because the ALJ expressly considered the claimant's "trochanteric bursitis and osteoarthritis of the left knee" in his step-four RFC analysis, the court found the ALJ had not erred in that regard. Citing the detailed evaluation the ALJ provided of the claimant's bursitis in the step-four analysis, the court held that "any error that the ALJ made in failing to include the bursitis at Step 2 was harmless." 498 F.3d at 911.

Citing out-of-circuit cases, the Commissioner also argues that the ALJ's failure to discuss certain evidence and diagnoses does not automatically mean it was not considered and that "deficiencies in opinion-writing technique are not reversible errors." Def.'s Br. 14. In principle, the court agrees that an obvious error in an opinion does not automatically require reversal when the reviewing court can review the ALJ's opinion and discern the ALJ's decision and how it was reached. *See, e.g., Moore v. Astrue*, 06-3514-HFF, 2008 WL 216605 (D.S.C. Jan. 24, 2008) (rejecting plaintiff's claim of error when ALJ inadvertently listed depression as "severe" impairment in finding, but analyzed

it in detail as nonsevere impairment in body of decision). Similarly, the court acknowledges there may be situations in which an error in an opinion is harmless because it would not change the outcome of the ALJ's decision. *See Jackson v. Astrue*, 07-1083-MBS, 2008 WL 4458155 (D.S.C. Sept. 30, 2008) (finding ALJ's discussion of three foot surgeries when claimant had undergone five surgeries harmless error when two were before relevant time period and would not have impacted decision).

In contrast, here, the ALJ did not acknowledge that Plaintiff had complained of rheumatoid arthritis or carpal tunnel syndrome at step two in deciding whether they were severe impairments or at step four in determining whether they impacted Plaintiff's RFC. The court does not find this error to be "harmless." The court agrees with Plaintiff that the ALJ erred and that the matter should be remanded for full discussion of each of Plaintiff's complaints and the ALJ's determinations regarding whether each impairment is "severe" and to discuss the impact of each impairment on Plaintiff's RFC.[2] *See Aurand v. Astrue*, 07-3968-HMH, 2009 WL 364389 (Feb. 12, 2009) (remanding, *inter alia*, ALJ had not discussed one of plaintiff's claimed impairments).

---

[2]Because the ALJ did not discuss Plaintiff's claimed impairments of rheumatoid arthritis or carpal tunnel syndrome at all, either in considering whether impairments were severe or in discussing Plaintiff's RFC, the court need not specifically address the Commissioner's argument that it is only necessary for the Commissioner to consider one impairment severe to adequately satisfy step 2. *See* Def.'s Br. 13. However, the court notes that at least one decision from this district has required remand for the ALJ to consider an impairment in its step-two analysis. *See Bourgeois v. Astrue*, 6:08-2608-SB, 2009 WL 2351743 (D.S.C. July 29, 2009) (remanding to require ALJ to consider diagnosis not discussed at step two and to consider all severe and nonsevere impairments in combination).

b.    The ALJ Erred By Not Considering All of Plaintiff's Impairments in Combination.

Relatedly, Plaintiff argues that, by not discussing her claims of rheumatoid arthritis or carpal tunnel syndrome in the decision at all, the ALJ did not appropriately consider all of her impairments in combination.  Pl.'s Br. 14.  The Commissioner again counters that the ALJ did consider all claims—including the rheumatoid arthritis and carpal tunnel syndrome—in his finding fibromyalgia a severe impairment and discussing Plaintiff's "pain."  Def.'s Br. 13–15.  The Commissioner does not point to any other portion of the ALJ's decision as indicating he adequately considered Plaintiff's impairments in combination.

The statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of these impairments in determining the claimant's disability status.  *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Rabon v. Astrue*, 4:08-3442-GRA, 2010 WL 923857 (D.S.C. Mar. 9, 2010) (requiring remand when ALJ did not consider severe and nonsevere impairments in combination).  Even if the claimant's impairment or impairments in and of themselves are not "listed impairments," the Commissioner must also "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. § 423(d)(2)(B) (2004).  The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them."  *Walker*, 889 F.2d at 50.  "As a

corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.*

The Commissioner's duty to consider the combined effect of Plaintiff's multiple impairments is not limited to one particular aspect of its review, but is to continue "throughout the disability process." 20 C.F.R. § 404.1523.  Here, the ALJ failed to consider—or, at least failed to articulate whether and how he considered—all of Plaintiff's impairments together, thereby violating 20 C.F.R. § 404.1523, which provides as follows:

> Multiple Impairments.  In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

*Id.; see also Fleming v. Barnhart*, 284 F. Supp. 2d 256, 270 (D. Md. 2003) ("The ALJ is required to assess the combined effect of a claimant's impairments throughout the five-step analytical process.")

The court agrees with Plaintiff.  The ALJ's preliminary discussion of the step-by-step analysis he is to undertake correctly indicates that he is to determine whether a claimant has an impairment or combination of impairments that is "severe" and that he is to consider "all of the claimant's impairments, including impairments that are not severe"

in determining a claimant's RFC.  Tr. 15 (setting out his responsibilities under steps two and four).   However, as discussed above, by not referencing Plaintiff's claimed impairments of rheumatoid arthritis and carpal tunnel syndrome, it is impossible to tell that the ALJ considered all of the claimant's impairments and whether they were severe. Further, nowhere in his analysis of Plaintiff's RFC does he indicate that he considered rheumatoid arthritis or carpal tunnel syndrome at all, nor does he indicate that he considered all of Plaintiff's severe and nonsevere impairments in combination.

The ALJ's declaration that "the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526)[,]" (Tr. 17), is insufficient under the law. *See Walker,* 889 F.2d at 50 (such a "finding in itself, however, is not sufficient to foreclose disability.")

Therefore, it is recommended that the decision be remanded to the ALJ so that he can examine Plaintiff's claimed impairments of rheumatoid arthritis and carpal tunnel syndrome and expressly determine whether he finds either of these to be "severe" impairments.  Then, regardless of whether he finds them to be severe or nonsevere, the ALJ should be instructed to consider the combined effect of all of Plaintiff's impairments, severe and non-severe, and, in the decision on remand, explain his evaluation of the combined effect of Plaintiff's multiple impairments.

> ### c. The ALJ's Finding Plaintiff's Migraine Headaches a Nonsevere Impairment is Supported by Substantial Evidence.

Plaintiff also challenges the ALJ's finding her migraine headaches to be a nonsevere impairment. Pl.'s Br. 18–19. She asks that the matter be remanded so that the ALJ can consider the impact of the migraines and other severe impairments on her RFC. Pl.'s Br. 19.

Unlike her claimed impairments of rheumatoid arthritis and carpal tunnel syndrome, however, the ALJ expressly considered Plaintiff's allegations of "disability due to migraine headaches and a cyst on the brain." Tr. 16. He reviewed Plaintiff's medical history regarding the migraine headaches and the cyst, noted an MRI showed a small cyst on her brain, and noted her treatment for headaches. Tr. 16–17 (citing medical records). The ALJ specifically noted that Dr. Sherrill examined the cyst and found it was "'rather benign-appearing[,]'" that Plaintiff reported in September 2005 that she had "experienced a few headaches, but was doing well overall," and that, on April 27, 2006, she reported her headaches were "remarkably better." Tr. 17. The ALJ then noted there "is no other significant, ongoing treatment for migraine headaches," and found the evidence did not support the "frequency, duration, or intensity" Plaintiff claimed the headaches caused. Rather, the ALJ found the evidence indicated Plaintiff's headaches had "improved significantly with treatment." *Id.* Based on those findings, the ALJ found that the headaches "do not create more than minimal limitation on [Plaintiff's] work-related functioning[,]" and that the headaches were "not severe." Tr. 17.

As the Commissioner properly pointed out, "severe" in this situation is a term of art, which means the impairment at issue "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Social Security Ruling ("SSR") 96-8p contemplates that a "severe" impairment "has more than a minimal effect on the ability to do basic work activities." SSR 96-8p. Plaintiff bears the burden of proving an impairment is "severe." *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

The court finds that the ALJ's finding that Plaintiff's migraine headaches are not a "severe" impairment is supported by substantial evidence. The ALJ discussed the headaches and found they did not create "more than a minimal limitation on her work-related functioning." Tr. 16–17. The ALJ evaluated the medical evidence regarding Plaintiff's headaches and considered Plaintiff's claims.

Plaintiff has not met her burden of showing the ALJ erred in his finding her impairment of migraine headaches and a cyst on the brain is not a severe one. Nonetheless, on remand, the ALJ is reminded that he must consider all of Plaintiff's impairments—including those he finds to be nonsevere such as the migraine headaches—in combination with her other impairments. *See Walker*, 889 F.2d at 50 and discussion above.

        2.     Evidence Submitted to the Appeals Council May Be Considered On Remand.

Next, Plaintiff argues that the Commissioner erred when the Appeals Council did not explain why it found additional evidence Plaintiff presented did not "provide a basis

for changing the Administrative Law Judge's decision." Pl.'s Br. 19–23; Tr. 5–8. Citing *Harmon v. Apfel*, 103 F. Supp. 2d 869, 873 (D.S.C. 2000), Plaintiff argues the Appeals Council should have provided specific findings as to the additional evidence, which included an MRI taken just after Plaintiff fell in September 2008, among other records from 2008 and 2009. *See* Tr. 380 (MRI); Tr. 369–93 (all additional records submitted to Appeals Council). Plaintiff characterizes the evidence as indicating changes to her spine and showing her back condition "was becoming an increasing problem." Pl.'s Br. 19–20.

Citing other cases and arguing *Harmon* does not set out the proper legal standard, the Commissioner counters that the Appeals Council is not required by regulation or statute to provide specific details of why it determined additional evidence would not change the decision rendered by the ALJ. Def.'s Br. 18–21. The Commissioner also examines the additional evidence itself and argues it did not apply to the relevant period because it post-dates Plaintiff's insured period and does nothing to change the evidence that was already before the ALJ at the August 14, 2008 hearing. *Id.* at 21.

The court acknowledges there is a split in authority regarding whether the Appeals Council is required to provide reasons for finding additional evidence would not change the ALJ's decision. *Compare Harmon*, 103 F. Supp. 2d at 873 (finding Appeals Council must make detailed assessment of why additional evidence would not change ALJ's decision) *with Hollar v. Comm'r of the Soc. Sec. Admin.*, No. 98-2748, 1999 WL 753999, *1 (4th Cir. Sept. 23, 1999) (unpublished opinion finding detailed explanation not required).

However, that controversy need not be addressed here. Because the court finds other issues must be addressed by the ALJ on remand, this additional evidence may now be reviewed by the ALJ in accordance with the directives herein. *Cf. Chapman v. Astrue*, 07-2868-TLW, 2010 WL 419923 (D.S.C. Jan. 29, 2010) (finding because matter being remanded on other grounds, ALJ to consider additional evidence rather than remand for Appeals Council's further consideration required).

        3.     The ALJ Should Reconsider Plaintiff's Credibility in View of All of Her Impairments.

Plaintiff's final allegation of error is that the ALJ did not properly consider her subjective complaints of pain or her credibility in accordance with the two-step analysis set out in *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Specifically, Plaintiff claims the ALJ did not apply the proper analytical framework in that he did adequately explain his findings on the first step of the two-step analysis. Plaintiff further claims the ALJ's credibility findings are not supported by substantial evidence. Pl.'s Br. 21–24.

"The determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 594. First, a threshold determination is made as to whether objective medical evidence shows the existence of a medical impairment that could reasonably be expected to produce the symptoms alleged. *Id.* This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Rather, it requires a finding that the impairment could have caused the specific pain alleged. *Id.*

Only after this threshold question has been considered is the ALJ to move to the second part of the analysis in which he evaluates "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work[.]" *Id.* at 595. This evaluation must take into account not only the claimant's statements, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it. 76 F.3d at 595.

Here, Plaintiff argues that the ALJ erred by performing an inadequate, perfunctory analysis of the threshold inquiry, jumping instead to the credibility determinations. Pl.'s Br. 23. By failing to focus sufficiently on the threshold question of whether objective medical evidence shows an impairment that may "reasonably be expected" to produce the pain or symptoms alleged, the ALJ then improperly included the "lack of objective medical evidence" to support some of Plaintiff's subjective allegations. Pl.'s Br. 24 (*citing* unpublished decision in *Harris v. Astrue*, 06-3171-DCN, (D.S.C. Feb. 6, 2008).

The Commissioner counters that the ALJ properly applied the two-pronged analysis. Even if the ALJ paid the first prong short shrift, the Commissioner argues, he "accepted that she had such impairments—in other words, *he decided the first prong in her favor*[.]" Def.'s Br. 16 (emphasis in original). The Commissioner then claims the ALJ properly considered Plaintiff's subjective claims and did not err by considering the lack of objective findings at the second prong of the *Craig* analysis. *Id.*

In this case, the ALJ found that the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" Tr. 18. He did, in fact, "decide the first prong in [Plaintiff's] favor." However, the undersigned agrees with Plaintiff that the first portion of the analysis was insufficient. The ALJ did no more than recite boilerplate language to satisfy step one. He did not explain which impairments were medically determinable and which impairments would cause which symptoms Plaintiff has alleged. As discussed above, the ALJ never even considered Plaintiff's claimed impairments of rheumatoid arthritis or carpal tunnel syndrome. As such, his threshold analysis may or may not have included consideration of those impairments and whether they could cause the subjective complaints and symptoms Plaintiff asserts.

The court recommends that, on remand, the ALJ also be instructed to conduct a thorough step-one analysis as set out by *Craig* in which he includes discussion of the medically determinable impairments he considered and the particular pains and limitations they could cause. *See Craig*, 76 F.3d at 596 (remanding to ALJ because he failed to "expressly consider the threshold question" and proceeded instead "directly to considering the credibility of [the] subjective allegations of pain."). After setting out his step-one analysis, he can then appropriately consider Plaintiff's subjective complaints and access her credibility as required in step two.

III.    Conclusion and Recommendation

Based on the above, the undersigned recommends that the Commissioner's decision be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action as set out herein.

IT IS SO RECOMMENDED.

July 26, 2010                                    Shiva V. Hodges
Florence, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**